UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STRATEGIC OPERATIONS, INC.,

Plaintiff,

v.

BREA K. JOSEPH, et al.,

Defendants.

Case No.: 17-CV-1539-JLS (NLS)

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

(ECF No. 10)

Presently before the Court is Defendants Brea K. Joseph and KBZ FX, Inc.'s Motion to Dismiss, ("MTD," ECF No. 10). Also before the Court is Plaintiff Strategic Operations, Inc.'s Response in Opposition to the Motion, ("Opp'n," ECF No. 11), and Defendants' Reply in Support of the Motion, ("Reply," ECF No. 13). The Court vacated oral argument on the Motion and took the matter under submission without oral argument. (ECF No. 12.) After considering the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiff Strategic Operations, Inc. ("StOps") filed a Complaint against Brea Joseph, Kasey Erokhin, KBZ FX, and KBX FX, Inc. ("Compl.," ECF No. 1.) Plaintiff brings causes of action of patent infringement, breach of nondisclosure agreement, and unfair competition.

Plaintiff is the executive licensee of United States Patent No. 8,840,403 ("the '403 patent"). (*Id.* ¶ 17.) The '403 patent "pertains to devices and methods for simulating realistic-looking, dynamic injuries that a person may receive during a traumatic event." (*Id.* ¶ 18.) For example, the devices claimed in the patent "can be worn by 'role players' during a simulated traumatic event to mimic a plurality of different combat-related bleeding wounds and internal injuries and allow first responders to perform medical treatment on the same." (*Id.*)

Defendants Joseph and Erokin were previously employed by Plaintiff as injury simulation makeup artists. (*Id.* ¶ 19.) During their employment, Joseph and Erokin were exposed to role players wearing and using the "Cut Suit," which is one of Plaintiff's human-worn trauma and medical training products. (*Id.* ¶¶ 19–20.) The "Cut Suit" embodies or uses one or more inventions claimed in the '403 patent. (*Id.* ¶ 19.) Plaintiff previously sued Joseph and Erokin for breach of loyalty, interference with employment relationship, and violation of the Uniform Trade Secrets Act. (*Id.* ¶ 22.) As part of the settlement agreement in that case, "Joseph and Erokhin agreed to refrain from using Strategic Operations' confidential and proprietary technology and trade secret information for any purpose." (*Id.* ¶ 23.)

In June 2011, Joseph and Erokin left Plaintiff's company and formed KBZ FX which is "a special effects medical training support system," which provides "injury simulations." (*Id.* ¶ 24.) One of KBZ FX's products is a "trauma training kit" (hereinafter, "TTK"), which is "a human body replica suit used to perform actual treatments on for medical training." (*Id.* ¶ 25.) Plaintiff alleges the TTK infringes the '403 patent. Plaintiff also brings causes of action for breach of nondisclosure agreement and unfair competition. Finally, Plaintiff alleges Defendants have failed to respect the corporate form of KBZ FX.

Defendants Joseph and KBZ FX, Inc. move to dismiss Plaintiff's infringement claim and alter ego allegations pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the

defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

/ / /

# ANALYSIS

## I. Patent Infringement

Plaintiff attached as an exhibit to its Complaint screenshots of KBZ FX's website. The first image is one of a skeleton with "TTK: Trauma Training Kit" written on top of the image. (Compl. 29.)[1] The text above the image provides:

> Introducing KBZ FX's Trauma Training Kit (TTK). The TTK is an effective and economical way to train your First Responders, Medical Professionals, and Combat Medics on live Role Players. In the past, in-field medical procedure training has been limited to practicing on rescue dummies and mannequins with limited audio and visual feedback resulting in a lack of realism. The TTK is a wearable chest prosthetic as well as a line of limb attachments that are worn by a live person that can give immediate realistic feedback in real time training scenarios. Please contact us (KBZFXmakeup1@gmail.com) for options and pricing.

(*Id.*) Below are more images of products, which appear to be part of the TTK. These images include an image of a "skin vest," an image of "rib cage and organs" depicting simulated organs, followed by multiple other images of "attachments" which are products for all body parts. (*Id.* at 30–43.)

Defendants' main argument is that these images from the website do not depict a product made, used or sold by KBZ but reflect "old marketing materials that were briefly posted on KBZ's website from January through April[] 2017 purely for marketing purposes." (MTD 6.) KBZ's actual product "lacks an outer raiment having at least one fluid reservoir (as required by the '403 patent) and lacks a cavity for containing prosthetic internal human organs (as required by the '403 patent)." (*Id.* at 6–7.) For these reasons, Defendants argue they do not infringe the '403 patent.

### A. Attached Declarations

Defendants state they have never sold or offered for sale any infringing product, and include declarations by Ms. Joseph to this effect. (ECF Nos. 10-2; 13-1.) In a footnote,

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

Defendants ask the Court to consider the declarations when analyzing the motion to dismiss. (MTD 6 n.1.)

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The only exceptions to this rule are for (1) material which is submitted with or necessarily relied on in the complaint and (2) matters of public record. *Id.* at 688–89. The attached declarations are not pleadings, *see* Fed. R. Civ. P. 7(a), were not attached to or relied on in the Complaint, nor are they a matter of public record. To consider the declarations would convert the Motion to Dismiss into a motion for summary judgment, and the Court declines to do so at this stage. Therefore, the Court cannot consider the declarations here.[2] *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) (refusing to consider declarations submitted in support of a motion to dismiss because they were not "referenced in the complaint" or matters of public record).

### B. *"Offer for Sale" Analysis*

An act of direct patent infringement occurs when an entity "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). The issue here is whether Plaintiff has sufficiently alleged Defendants offered for sale an infringing product. The statute broadly defines "offer for sale" or "offer to sell" as "that in which the sale will occur before the expiration of the term of the patent." 35 U.S.C. § 271(i). The Federal Circuit has held an "offer to sell" occurs when the alleged infringer sends "a description of the allegedly infringing merchandise and the price at which it can be purchased." *3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998). The Federal Circuit later revisited the issue and defined "'offer to sell' liability according

---

[2] For the same reasons, the Court does not consider the declaration and exhibits attached to Plaintiff's Opposition. (ECF No. 11-1.) *See also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (noting that "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

to the norms of traditional contractual analysis." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254–55 (Fed Cir. 2000). The next year, the Federal Circuit reaffirmed this general definition after interpreting the Supreme Court's opinion in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998). *See Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046 (Fed. Cir. 2001). The court held the language from *Pfaff* "strongly suggests that the offer must meet the level of an offer for sale in the contract sense, one that would be understood as such in the commercial community. Such a reading leaves no room for 'activity which does not rise to the level of a formal "offer" under contract law principles.'" *Id.* at 1046–47. The court "note[d] in passing that contract law traditionally recognizes that mere advertising and promoting of a product may be nothing more than an invitation for offers, while responding to such an invitation may itself be an offer." *Id.* at 1048 (citing Restatement (Second) of Contracts § 26 (1981)).

Here, accepting all Plaintiff's allegations as true, and even disregarding Defendants' declarations, the Court finds the posting of TTK, as depicted exhibit 2 to the Complaint, is not an "offer for sale." There is no information on pricing of the product; instead the post specifically invites the consumer to send an email to request pricing information. This is merely an "invitation for offers." *Id.* The posting is not sufficiently alleged to be an "offer for sale."

The Complaint specifically alleges "[d]espite being informed of StOps' '403 Patent and StOps concerns that the TTK infringes the '403 Patent, Joseph, Erokhin, KBZ FX, and now KBZ FX, INC. nevertheless continue to make, use, sell, and offer for sale, the TTK." (Compl. ¶ 29.) But this is merely a conclusory allegation, and, without the attached exhibit, has no support.[3] Because Plaintiff has failed to sufficiently plead an element of patent infringement, the Court **GRANTS** Defendants' Motion to Dismiss this claim.

---

[3] Further, Defendants admit they do make a product, which is not the product depicted on the website (TTK), but argue that it is not infringing. (MTD 6 (referring to "the actual KBZ product").) Plaintiff has not alleged that this product is sold or offered for sale by Defendants, thus the Court does not analyze this unspecified product.

## II.     Alter Ego Allegations

Plaintiff alleges:

> On information and belief, Defendants Erokhin, Joseph, KBZ FX, and KBZ FX, Inc., and each of them, among other things: (a) commingled funds and other assets; (b) treated corporate assets as personal assets; (c) failed to observe corporate formalities and adhere to corporate bylaws; (d) used the corporate structure as a subterfuge for illegal transactions; and (e) were undercapitalized; and, therefore, there exists a unity of interest and ownership between each of these named Defendants such that Defendant KBZ FX, Inc. is the Alter Ego of Defendants Erokhin, Joseph, KBZ FX and that any separateness between them has ceased to exist and that to adhere to the fiction of their separate identities would result in injustice.

(Compl. ¶ 9.)  Defendants move to dismiss these allegations because they are not pled with particularity.  (MTD 8.)

"Conclusory allegations of 'alter ego' status are insufficient to state a claim." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).  "Rather, a plaintiff must allege specifically both the elements of alter ego liability, as well as facts supporting each."  *Id.*  These elements are: "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab–Con, Inc.*, 772 F.2d 543, 545–46 (9th Cir. 1985).  In analyzing the doctrine, courts consider factors such as:

> commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538–39 (Ct. App. 2000) (internal quotations omitted).

For the first alter ego element, Plaintiff merely alleges the basic *Sonora* factors:

mixing funds, lack of corporate formalities, and undercapitalization. (Compl. ¶ 9.) Plaintiff provides no facts in support of these allegations. For the second alter ego element, Plaintiff alleges "to adhere to the fiction of [Defendants'] separate identities would result in injustice." (Compl. ¶ 9.) Again, this is conclusory, has no support, and Plaintiff has not alleged how or why injustice would result if the corporate veil is not pierced. It is also unclear to which cause of action the alter ego allegations apply, and why piercing the corporate veil is necessary for an equitable result. Plaintiff has not sufficiently pled either element of alter ego and the Court **GRANTS** Defendants' Motion to Dismiss the alter ego allegations.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. The Court **GRANTS** Plaintiff leave to amend its Complaint. Plaintiff **MAY** file an amended complaint on or before thirty (30) days of the electronic docketing of this Order. Should Plaintiff choose not to file an amended complaint by this time, this case will proceed on the remaining allegations.

**IT IS SO ORDERED.**

Dated: August 13, 2018

Hon. Janis L. Sammartino
United States District Judge