Gary L. Eastman, Esq. (CSB #182518)
Eastman & McCartney LLP
401 West A Street, Suite 1785
San Diego, CA 92101
(619) 230-1144

Attorneys for Plaintiff
STRATEGIC OPERATIONS, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATEGIC OPERATIONS, INC., a California Corporation <br><br> Plaintiff, <br><br> vs. <br><br> BREA K. JOSEPH, an Individual; KASEY EROKHIN, an Individual; KBZ FX, an unknown business entity; KBZ FX, INC. a California Corporation; and DOES 1-10, inclusive, <br><br> Defendants. | **CASE No. 3:17-CV-1539-JLS-WVG** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT JOSEPH AND KBZ FX, INC.'S RENEWED MOTION TO DISMISS** <br><br><br> Date:     November 15, 2018 <br> Time:    1:30 p.m. <br> Judge:   Hon. Janis L. Sammartino <br> Courtroom:  4D |

# TABLE OF AUTHORITIES

## CASES

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318        13
    (Fed. Cir. 2013)

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868        4
    (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.        4, 5
    Ed. 2d 929 (2007)

*Disc Disease Sols. Inv. v. GCH Sols., Inc.*, 888 F.3d 1256, 1259        11
    (CAFC, 2018)

*Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L.        4
    Ed. 2d 1081 (2007)

*Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986)        3

*Tex. Advanced Optoelectronic Sol'ns., Inc. v. Renesas Elecs. Am.,*        13
    *Inc.*, 895 F.3d 1304, 1332 (CAFC 2018)

## CODES

Fed. R. Civ. P. 12(b)(6)        3

35 U.S. Code § 271        4

---

Strategic Operations Opposition to Renewed Motion to Dismiss        17CV1539-JLS-WGV

Plaintiff Strategic Operations, Inc., through its undersigned counsel, opposes Defendants Brea K. Joseph and KBZ FX, Inc.'s (collectively, "Defendants") RENEWED motion to dismiss (Dkt. No. 17) under Fed. R. Civ. P 12(B)(6).

## FACTUAL BACKGROUND

Plaintiff Strategic Operations, Inc. ("StOps") asserted patent infringement of United States Patent No. 8,840,403 ("the '403 Patent"), titled "Wearable Partial Task Surgical Simulator" by Defendants (Dkt. No. 1).

Following Defendants' challenge under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 10), Plaintiff filed an Amended Complaint ("FAC", Dkt. No. 16) re-asserting patent infringement of the '403 Patent, and further asserting patent infringement of United States Patent No. 9,336,693 ("the '693 Patent"), titled "Wearable Partial Task Surgical Simulator"  and United States Patent No. 9,916,774 ("the '774 Patent"), titled "Wearable Partial Task Surgical Simulator."

In response to the First Amended Complaint, Defendants again seek to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 17).

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

1   Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of
2   the claim showing that the pleader is entitled to relief."

3       In evaluating the sufficiency of the allegations within a Complaint, the
4   Court has set forth the "*Iqbal/Twombly*" plausibility pleading standard that was
5   articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167
6   L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.
7   Ed. 2d 868 (2009).  Under *Iqbal/Twombly*, a plaintiff is required to "state a claim
8   to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This plausibility
9   standard is met when "the plaintiff pleads factual content that allows the court to
10  draw the reasonable inference that the defendant is liable for the misconduct
11  alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Specific facts
12  are not necessary; the statement need only 'give the defendant fair notice of what
13  the . . . claim is and the ground upon which it rests.'" *Erickson v. Pardus*, 551 U.S.
14  89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (alteration in original) (internal
15  quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

16      Plaintiff StOps has plead sufficient facts to satisfy the *Iqbal/Twombly*
17  standard, and thus the First Amended Complaint should remain.

18

19  **PATENT INFRINGEMENT**

20  35 U.S. Code § 271 sets forth the law for infringement:

21      (a)   Except as otherwise provided in this title, whoever

22  without authority **makes, uses, offers to sell, or sells** any patented

23  invention, within the United States or imports into the United States

24  any patented invention during the term of the patent therefor,

25  infringes the patent.  (emphasis added)[1]

26

27  [1] Defendants focus great energy stating that none of the Instagram images constitute an "offer
    for sale" of the KBZ FX Trauma suit; 35 U.S. Code § 271 prohibits the making and using a
28  patent invention – even if not sold.  The Instagram images, posted by Defendants themselves
    and discussed throughout Defendants Motion clearly depict a KBZ FX Trauma suit that was

1    StOps alleges patent infringement by all Defendants in its First Amended
2    Complaint and in paragraph 38, asserts that "The use and sale of the TTK by
3    Joseph, Erohkin and KBZ FX violates StOps' patent rights and allows Defendants
4    to compete unfairly against STOps."  (FAC ¶ 38).  Paragraph 41 further asserts
5    with particularity the product manufactured and sold by Defendants, and the
6    specific claimed features which it embodies.  (FAC ¶ 41).  The reference to
7    Defendants product as a "TTK" (trauma training kit) is general, and while the
8    TTK is referred to throughout the First Amended Complaint to reference
9    Defendants' wearable trauma products, StOps specifically asserts that Defendants'
10   analogous products are fully contemplated as infringing products. (FAC ¶ 45).
11   StOps has specifically asserted Defendants are infringing, either literally or under
12   the doctrine of equivalents, the '403 Patent (FAC ¶ 41), the '693 Patent (FAC ¶
13   52), and the '774 Patent (FAC ¶ 54).

14        Defendants seem to propose a heightened standard for pleading beyond
15   *Twombly* and *Iqbal*, in which StOps is required not only to "plead sufficient
16   factual allegations to show it is plausibly entitled to relief," *Twombly*, 550 U.S. at
17   555-56, but also provide sufficient evidence at the pleading stage to *prove* each
18   and every one of its factual allegations.  Moreover, Defendants' new standard
19   would ignore the obvious inferences based on Defendants' own captions
20   explaining the contents of Defendants' own photographs.  This new standard
21   would create an even higher burden of proof for pleading than that required for
22   proving infringement at trial. (See Defendants' Dkt. 17-1, pp. 4-6).  Defendants
23   provide no authority to support its additions to the *Iqbal/Twombly* standard.
24   Indeed, the entirety of Defendants' arguments with respect to the Patent

25
26

27   **made** by Defendants, and **used** in military trainings - sufficient to find infringement.  Moreover,
     even though Defendants assert that the TTK was never sold, the image of the TTK remain in the
28   Complaint to illustrate Defendants' component manufacturing capabilities for the Trauma suit.

Strategic Operations Opposition to Renewed Motion to Dismiss       17CV1539-JLS-WGV

Infringement Cause of Action is an attack on the Exhibits that completely overlooks the facts specifically alleged in the First Amended Complaint.

In Defendants' motion, they have admitted that the Instagram images in the First Amended Complaint are authentic and depict Defendants manufacturing and sales of an infringing KBZ Trauma Suit product (See Dkt. No. 17-1, pg. 1, lines 18-20). For instance, in many of its own Instagram postings, the KBZ FX Trauma suit is shown in use. (See FAC, Exhibits 5 and 6 (pp. 71-75), and prior Dkt. No. 11-1, Decl. Eastman, Exhibits 4-8). More specifically, in these images, a human worn raiment is shown and the product is touted as simulating a "sucking chest wound." Reference to Exhibit 5 (FAC at pg. 73) shows clearly a KBZ FX trauma suit being used during a combat medical training scenario; it has the capability to have a needle decompression performed on it, "with air releasing sounds." While perhaps stating the obvious, such capability is only achieved with a chest *cavity* and *simulated lung* within the suit.



(Enlarged image from FAC Exhibit 5)

1        While this next Instagram image was not previously submitted due to being

2  considered cumulative, Defendants posting under the KBZ FX Instagram

3  account[2], have clearly used a Trauma Suit that is squarely within the scope of

4  claims of the '403, '693, and '774 Patents.  Specifically, the text associated with

5  this post touts the suit "being used during field medical training", "equipped with

6  wearable organs"[3], "lifelike skin that can actually be treated", "perform a tension

7  pneumothorax", "practice an emergency cricothyroidotomy", and treat various

8  injuries, such as "eviscerated bowels[4], lacerations and gunshot wounds can be

9  added to the suit that are equipped with bleeding capabilities[5]."



(Enlarged image from FAC Exhibit 6)

---

[2] Defendants improperly assert that one of the images attached to the Complaint cannot be attributed to Defendants because they were posted by Justin Nave.  Mr. Nave is the Special Effects Operations Manager for KBZ FX as revealed in his Linked-In profile. Moreover, allegations in the Complaint that the Instagram postings are associated with KBZ are taken to be true. *Sanders* 794 F.2d at 481;

[3] "Wearable organs" can only be contained within a cavity of the suit, even if they are not visible from a distant photograph.

[4] Bowels are housed within the abdomen, inferring that they are contained within a cavity beneath the skin.

[5] "Bleeding capabilities" require a reservoir of simulated blood, and an orifice through which to pump it to simulate bleeding lacerations and gunshot wounds.

Strategic Operations Opposition to Renewed Motion to Dismiss      17CV1539-JLS-WGV

Additionally, FAC Exhibits 7, 8, and 9 show clearly each component used in the KBZ Trauma suit (skin, organs, ribs, etc., demonstrating the components that Defendants use to manufacture and assemble the infringing units.  Indeed, each of the features listed above in relation to the KBZ Trauma suit are precisely the features that are claimed in the StOps patents.  For instance, even the most basic claim analysis of Claim 1 of the '403 Patent reveals infringement as asserted in the First Amended Complaint.

| The '403 Patent: Claim 1[6] | KBZ Accused Trauma Suit |
|---|---|
| 1. A wearable device for simulating a trauma event which comprises a | clearly a wearable trauma suit |
| raiment dimensioned to cover the torso of a person, wherein the raiment is formed as a layer having an inner surface and an outer surface, and wherein the outer surface has a color and a texture comparable to human skin | (B) [7] |
| wherein the raiment has at least one fluid reservoir for holding a blood-like fluid therein and | (C) |
| is formed with at least one orifice on the outer surface thereof in fluid communication with the reservoir for selectively expelling the blood-like fluid from the reservoir and through the orifice to simulate the trauma event | (D) |
| vest dimensioned to fit on the torso of a person underneath the raiment, wherein the vest has a first portion covering at least part of the chest of a person, a second portion attached to the first portion | (E) |
| and forming a cavity generally between the first and second portions | (F) |
| third and fourth side portions attached to the first portion and covering at least part of the sides of the torso of a person | (G) |

---

[6] Note:  Claim 1 does not require an internal organ within the cavity of the wearable device.
[7] Each Reference (B), (C), etc. refer to features in the following Instagram posts by Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



(B) Raiment covers torso with an outer layer comp to human skin

(C) A fluid reservoir for holding blood (inferred from blood)

(D) Orifice to expel blood

(E) A vest to fit the person and cover the chest (underneath the raiment)

(F) A cavity formed between vest and raiment

(G) Side portions



(B) Raiment covers torso with an outer layer comp to human skin

(C) A fluid reservoir for holding blood (inferred from blood)

(D) Orifice to expel blood

(E) A vest to fit the person and cover the chest (underneath the raiment)

(F) A cavity formed between vest and raiment

(G) Side portions

27

28

The Court has dealt with this very issue previously, and allegations that a product infringes either literally or through the doctrine of equivalents has been

---

held sufficient.  Specifically, in *Disc Disease Sols. Inv. v. GCH Sols., Inc.*, 888 F.3d 1256, 1259 (CAFC, 2018) the technology involved was simple, the patents were attached to the complaint, and the complaint specifically identified the accused products – by name and by attaching photographs of the products. Plaintiff's allegation that the accused products meet "each and every element of at least one claim of the '113 patent, either literally or equivalently" was sufficient to satisfy *Iqbal/Twombly* and place the Defendants on fair notice of infringement of the asserted patents.  (*Id.* at 1497).   StOps' First Amended Complaint has identical allegations to those sufficiently presented in *Disc Disease*.

Despite these clear allegations of infringement, Defendants grossly mischaracterize the interactions between counsel early in this case in an attempt to mislead this court.  (See Defendants' Dkt. No. 17-1 pg. 1, lines 27-28, pg. 4, lines 24-26).  The use of the accused devices by Defendants occurs in a highly controlled environment in a secured military base, such as the Marine Corps' Camp Pendleton.  Access is not public, and the only non-military personnel allowed on the training premises during use of the accused device are those associated with the training – namely, the Defendants.

The undersigned counsel was presented only a brief opportunity to inspect a trauma training product purported to be used by KBZ – but only after signing a Non-Disclosure and Confidentiality Agreement.  StOps' personnel were excluded from actually viewing the KBZ FX Trauma Suit.  Nevertheless, Counsel's review revealed the KBZ FX Trauma suit included a raiment, a treatable simulated skin, a ribcage, an internal organ (lung) in a cavity beneath the skin, a bleeding gunshot wound with a blood source, and other features.  No photographs were allowed to be taken during the inspection, and none were provided by Defendants' counsel. At no time during the viewing, or anytime thereafter, did StOps indicate in any manner whatsoever that the accused KBZ FX Trauma suit does not infringe the StOps' patents. To the contrary, Counsel for Plaintiff specifically set forth the

---

1  basis for infringement to Defendants' Counsel, complete with claim charts and

2  written descriptions.  (See Decl. Eastman, Dkt. No. 11-1, pp. 5-15).

3

4  ### RELATED CLAIMS ARE SUFFICIENTLY PLED

5  StOps' Breach of Nondisclosure Agreement claims are premised on

6  Defendant Joseph and Erohkin's failure to abide by their prior agreements with

7  StOps (FAC ¶59, 61, 65; Exhibits 10 and 11).  While Defendants seek to tie their

8  breach of their prior agreements to their current infringement, such connection is

9  not required as the breach of contract claims are separately existing causes of

10  action independent of StOps' patent infringement claims.

11  StOps claims under Cal. Bus. & Profs. Code §17200 are likewise premised

12  on both Defendants' patent infringement and breach of the NonDisclosure

13  Agreement (FAC ¶68, 69, 70).  Again, this claim survives whether Plaintiff has

14  articulated its patent infringement allegations with sufficient particularity.

15  Defendants incorrectly characterize StOps' Complaint as failing "to specify

16  the factual basis for its claims." (See Defendants' Dkt. 17-1, pg. 6). A cursory

17  glance at the First Amended Complaint shows the inaccuracies in Defendants'

18  false and misleading characterization of StOps' pleadings as being entirely on

19  information and belief or otherwise lacking factual basis. Any allegation made on

20  information and belief is adequately supported by facts directly pleaded, including

21  Joseph and Erokhins' prior employment with StOps, their copying of StOps' Cut

22  Suit to create the TTK, Justin Nave's affiliation with Defendants' business, the

23  existence of the nondisclosure agreement, the use of StOps' confidential

24  information by Joseph and Erokhin, StOps' lack of consent to Joseph and

25  Erokhins' use of StOps confidential information, StOps' compliance with its

26  obligations under the NonDisclosure agreement, etc. (FAC ¶¶ 20-21. 23-27, 28-

27  33, 35-37, 59, 61-66, 68-72).  Not a single allegation in the previously cited

28  paragraphs of the First Amended Complaint is made on information and belief,

---

Strategic Operations Opposition to Renewed Motion to Dismiss      17CV1539-JLS-WGV

and every one is made independently from the Patent Infringement Cause of Action. They provide more than a sufficient factual basis for the causes of action in the complaint.  Thus Defendants' fixation on a single (misquoted) paragraph in which StOps uses the words "informed and believes" and some factual similarities between the Patent Infringement and other causes of action is entirely misplaced.

Defendants assert that it is impossible for both trade secret and patented technology to be present in the same product. (Defendants' Dkt. 17-1, pg. 7, lines 9-18).  Defendant provides no reasoning or authority to support this.[8]  In fact, verdicts of patent infringement and trade secret misappropriation by the same product are entirely possible. *Tex. Advanced Optoelectronic Sol'ns., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1332 (CAFC 2018) (affirming verdicts of trade secret misappropriation and patent infringement on the same accused product).

## NON-ASSERTED CAUSES OF ACTION FOR ALTER-EGO

StOps asserts on information and belief that KBZ FX, Inc. is merely the alter-ego of Defendants Erohkin and Joseph created in an attempt to avoid liability in this action.  (FAC ¶8).  There is no specific cause of action alleging Alter Ego, nor is there a specific prayer for relief requesting a finding of Alter-Ego at this time.  StOps firmly believes that there is no genuine separateness between KBZ FX, Inc. and Erohkin and Joseph, and will seek to prove this fact through discovery and at trial.

---

[8] In particular, Defendant's citation of *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318 (Fed. Cir. 2013) fails to support this. It dismissed a trade secret claim not because of the patent claim, but rather because the source from which Complaint alleged that the trade secret information had been obtained was already in the public domain. *Id.* at 1329.

| | |
|---|---|
| 1 | **CONCLUSION** |
| 2 | StOps has reviewed Defendants Renewed Motion to Dismiss and has, in |
| 3 | response, directed the Court to specific passages in the First Amended Complaint. |
| 4 | StOps asserts that this showing is sufficient to overcome Defendants' allegations, |
| 5 | and requests that this Court deny Defendants' Motion to Dismiss.  StOps |
| 6 | respectfully asserts that it has presented sufficient support for its claims in the |
| 7 | First Amended Complaint that allows the court to draw the reasonable inference |
| 8 | that the defendant is liable for the misconduct alleged.  Should the Court be |
| 9 | inclined to require more specificity in its claim for its various causes, StOps |
| 10 | respectfully requests a final opportunity to amend its complaint to cure any |
| 11 | remaining deficiencies. |

DATED: November 1, 2018

EASTMAN & MCCARTNEY LLP

By:  /s/ Gary L. Eastman

Gary L. Eastman, Esq.
Attorneys for Plaintiff
STRATEGIC OPERATIONS, INC.

1
2

## <u>CERTIFICATE OF SERVICE</u>

3      I, the undersigned certify and declare as follows:

4      I am over the age of eighteen years and not a party to this action.  My business address is
5  401 West A Street, Suite 1785, San Diego, California, 92101, which is located in the county
   where the service described below took place.

6      On November 1, 2018, at my place of business in San Diego, California, I served a copy
7  of the following document:

8
9  **Strategic Operations, Inc.'s Opposition to Defendants' Renewed Motion to
   Dismiss**

10
11 <u>Via United States Mail and e-mail</u> The undersigned hereby certifies that he caused a copy of the
   foregoing documents to be filed with the clerk of the U.S. District Court, Southern District of
   California, using the CM/ECF filing system, and has forwarded a copy to be electronically
12 mailed to the following recipients:

13
14 James V. Fazio, III Esq.
   San Diego IP Law Group LLP
15 12526 High Bluff Drive, Suite 300
   San Diego, California 92130
16 jamesfazio@sandiegoiplaw.com
17 Attorneys for Defendant

18

19     I certify and declare under penalty of perjury under the laws of the United States of
   American and the State of California that the foregoing is true and correct.
20
21 Executed on November 1, 2018, in San Diego, California.

22                              By:      /s/ Gary Eastman
                                        _____
23                                       Gary Eastman

24
25
26
27
28

_____

Strategic Operations Opposition to Renewed Motion to Dismiss      17CV1539-JLS-WGV