UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| STRATEGIC OPERATIONS, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>BREA K. JOSEPH, an individual;<br>KASEY EROKHIN, an individual;<br>KBZ FX, an unknown business entity; and<br>KBZ FX, INC., a California corporation,<br><br>              Defendants. | Case No.: 17-CV-1539 JLS (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>(ECF No. 17) |
|---|---|

     Presently before the Court is Defendants Brea K. Joseph and KBZ FX, Inc.'s (the "Movants") Motion to Dismiss the Amended Complaint for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ("Mot.," ECF No. 17).  Also before the Court is Plaintiff Strategic Operations, Inc.'s ("StOps") Response in Opposition to ("Opp'n," ECF No. 19) and the Movants' Reply in Support of ("Reply," ECF No. 21) the Motion.  The Court vacated the hearing and took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 20.  Having considered the Movants' and Plaintiff's arguments and the law, the Court **GRANTS IN PART AND DENIES IN PART** the Movants' Motion as follows.

# BACKGROUND[1]

Plaintiff is the exclusive licensee of United States Patent Nos. 8,840,403 (the "'403 Patent"), 9,336,693 (the "'693 Patent"), and 9,916,774 (the "'774 Patent") (together, "the Patents-in-Suit"). FAC ¶ 18. The Patents-in-Suit "pertain to devices and methods for simulating realistic-looking, dynamic injuries that a person may receive during a traumatic event." *Id.* ¶ 19. For example, the devices claimed in the Patents-in-Suit "can be worn by 'role players' during a simulated traumatic event to mimic a plurality of different combat-related bleeding wounds and internal injuries and allow first responders to perform medical treatment on the same." *Id.*

Mses. Joseph and Erokhin were previously employed by Plaintiff as injury simulation makeup artists. *Id.* ¶ 20. During their employment, Mses. Joseph and Erokhin were exposed to role players wearing and using the "Cut Suit," which is one of Plaintiff's human-worn trauma and medical training products. *Id.* ¶¶ 20–21. The "Cut Suit" embodies or uses one or more inventions claimed in the Patents-in-Suit. *Id.* ¶ 20. Plaintiff previously sued Mses. Joseph and Erokhin for breach of loyalty, interference with employment relationship, and violation of the Uniform Trade Secrets Act. *Id.* ¶ 23. As part of the settlement agreement in that case, Mses. "Joseph and Erokhin agreed to refrain from using Strategic Operations' confidential and proprietary technology and trade secret information for any purpose." *Id.* ¶ 23.

In June 2011, Mses. Joseph and Erokhin left StOps and formed KBZ FX, which is "a special effects medical training support system" providing "injury simulations." *Id.* ¶ 25. One of KBZ FX's products is a "trauma training kit" (the "TTK"), which is "a human body replica suit used to perform actual treatments on for medical training." *Id.* ¶ 26. Plaintiff alleges that the TTK infringes the Patents-in-Suit. *See id.* ¶¶ 41, 52, 54. Plaintiff also alleges causes of action for breach of a nondisclosure agreement that Mses. Joseph

---

[1] The facts alleged in Plaintiff's operative First Amended Complaint ("FAC," ECF No. 16) are accepted as true for the purpose of this Motion. *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

and Erokhin each executed at the outset of their employment with StOps, *see id.* ¶¶ 59–66, and unfair competition in violation of California Business and Professions Code sections 17200 *et seq.*, based on Defendants' alleged patent infringement and use of StOps' confidential and proprietary technology and trade secret information. *See id.* ¶¶ 68–72. Finally, Plaintiff alleges "[o]n information and belief" that "KBZ FX, Inc. was formed as a direct result of the threat of this litigation, and is merely the alter-ego of Defendants Erokhin and Joseph." *Id.* ¶ 8.

On July 28, 2017, StOps filed a Complaint against Defendants, alleging causes of action of patent infringement, breach of nondisclosure agreement, and unfair competition in violation of California Business and Professions Code section 17200 ("UCL"). *See generally* ECF No. 1. StOps filed a Waiver of Service of Summons as to the Movants on February 27, 2018.[2] *See* ECF No. 6. The Movants then moved to dismiss Plaintiff's patent infringement cause of action and alter ego allegations pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 30, 2018. *See generally* ECF No. 10.

On August 13, 2018, the Court granted the motion. *See generally* ECF No. 15. As for the patent infringement cause of action, the Court concluded that Plaintiff had not sufficiently alleged that the Movants had continued to make, use, sell, or offer for sale the TTK pursuant to 35 U.S.C. § 271(a) because the allegation was conclusory and had no factual support. *Id.* at 5–6. Regarding Plaintiff's alter ego allegations, the Court similarly concluded that Plaintiff had not sufficiently pleaded either element of alter ego liability. *Id.* at 7–8. The Court granted Plaintiff leave to amend its complaint. *Id.* at 8.

Plaintiff filed its operative First Amended Complaint on September 12, 2018. *See generally* ECF No. 16. The instant Motion followed on September 26, 2018. *See generally* ECF No. 17.

/ / /

/ / /

---

[2] To date, StOps has not filed anything indicating that Ms. Erokhin or KBZ FX has been served.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

///

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). "A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural questions not pertaining to patent law." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied* 132 S. Ct. 2101 (2012). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### I.  Patent Infringement

StOps claims that the TTK infringes the Patents-in-Suit. *See* FAC ¶¶ 40–57. Specifically, "[t]he TTK embodies and uses inventions claimed in the '403 Patent and meets each and every element of at least one claim of the '403 Patent, either literally or equivalently," by, "[f]or example, . . . includ[ing] a raiment and vest for covering the torso of a person" with "an outer surface with a color and a texture comparable to human skin" and "[m]ounted on the outer surface . . . an orifice that is in fluid communication with a fluid reservoir, thus allowing the person wearing the TTK to selectively expel a blood-like fluid from the reservoir and through the orifice to simulate a bleeding wound or injury." *Id.* ¶ 41. "The vest includes an artificial rib cage that is positioned against the inner surface of the raiment to simulate a skeletal structure and prosthetic internal human organs that are removable from the TTK and replaceable with other prosthetic internal human organs." *Id.* The TTK also "embodies and uses inventions claimed in the '693 Patent, and meets each

and every element of at least one claim of the '693 Patent, either literally or equivalently," by "includ[ing] a raiment to cover a person's torso and . . . covered with an outer surface with at least one orifice through which blood-like fluid is dispensed from a fluid reservoir to simulate a trauma event, and a vest underneath the raiment." *Id.* ¶ 52.  Finally, "[t]he TTK embodies and uses inventions claimed in the '774 Patent and meets each and every element of at least one claim of the '774 Patent, either literally of equivalently," by "includ[ing] a raiment to cover a person's torso and . . . covered with an outer surface with at least one orifice through which blood-like fluid is dispensed from a fluid reservoir to simulate a trauma event, and a vest underneath the raiment and one or more wound simulators on the outer surface." *Id.* ¶ 54.  StOps attaches several exhibits to the First Amended Complaint purporting to depict the TTK, including a printout from KBZ FX's website, *see* FAC Ex. 4, and photos posted to KBZ FX, Inc.'s Picbear page, *see* FAC Ex. 5, and KBZ FX's and/or Ms. Brea's Instagram accounts.  *See* FAC Exs. 6–9.

The Movants argue that the exhibits to the First Amended Complaint fail to provide any factual basis for infringement of the Patents-in-Suit.  *See* Mot. at 3–6.  According to the Movants, the photos establish that they have not made a product embodying the inventions claimed in the Patents-in-Suit because none of the photos depicts a product having a blood-like fluid reservoir or any cavity for containing artificial human organs as required by the Patents-in-Suit.  *See id.*  StOps, on the other hand, argues that its exhibits clearly depict that the Movants are manufacturing and selling a product that infringes the Patents-in-Suit.  *See* Opp'n at 4–11.[3]

An act of direct patent infringement occurs when an entity "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a).

---

[3] To the extent StOps relies on Instagram images and/or text not contained in the exhibits to its First Amended Complaint, *see* Opp'n at 7, the Court declines to consider them for purposes of this Motion. *See* ECF No. 15 at 5 (citing *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'")).

Here, StOps alleges that Defendants have made and sold a product, the TTK, that infringes the Patents-in-Suit. *See* FAC ¶¶ 40–57. The Court previously determined that the printout from KBZ FX's website, now Exhibit 4 to the First Amended Complaint, was not an offer for sale. *See* ECF No. 15 at 6. StOps now attaches additional exhibits, however, purporting to show that Defendants have made and rented and/or leased the TTK to agencies for military training. *See* FAC Exs. 5–9; *see also* FAC ¶¶ 25–35.

The Court concludes that StOps has sufficiently alleged a cause of action for infringement of the Patents-in-Suit. It is clear from the photos that the Defendants have "ma[d]e" the TTK. StOps is correct that "[Section] 271 prohibits the making and using a patent invention – even if not sold." Opp'n at 4 n.1; *see also Neff Instrument Corp. v. Cohu Elecs., Inc.*, 269 F.2d 668, 673 (9th Cir. 1959) ("The mere manufacture of a patented article, without sale, is sufficient to create an infringement.") (citing *Becton Dickinson & Co. v. R. P. Scherer Corp.*, 211 F.2d 835, 842 (6th Cir. 1954); *Carter Crume Co. v. Am. Sales Book Co.*, 124 F. 903 (C.C.W.D.N.Y.), *cert. denied*, 190 U.S. 560 (1903)).

Further, the Court is not prepared to conclude at this stage, as the Movants urge, that the TTK as depicted in Exhibits 4 through 9 to the First Amended Complaint does not have a blood-like fluid reservoir or any cavity for containing artificial internal human organs, as required by the Patents-in-Suit. *See* Mot. at 1–2, 4–6. For purposes of this Motion, the Court must accept as true all of StOps' well-pleaded allegations and draw all reasonable inferences in its favor. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Exhibit 4 clearly touts that the TTK's "exit wound attachments come equipped with bleeding capabilities." FAC Ex. 4 at 58.[4] The Court therefore may infer that the TTK has a blood-like fluid reservoir. The website also advertises that the TTK is or may be equipped with multiple "organs," including a "simulated esophagus"; "3 liver attachments" and "3 stomach attachments," both of which "simulate healthy, diseased, and shrapnel functions

---

[4] Pin citations to pages without independent pagination refer to the CM/ECF page numbers electronically stamped at the top of each page.

[that] comes with bleed capabilities"; and an "intestinal tract [that] comes with attachment piece to allow for pig intestines to be used for realistic eviscerated bowel simulation." *Id.* at 58–59. The Court therefore may also infer that the TTK has a cavity for containing artificial human organs. Consequently, the Court concludes that StOps' allegations are sufficient to state a claim for infringement of the Patents-in-Suit and **DENIES** the Movants' Motion as to StOps' first cause of action.

## II. Breach of Nondisclosure Agreement

StOps alleges on information and belief that Mses. Joseph and Erokhin breached a nondisclosure agreement signed at the outset of their employment with StOps by "us[ing] StOps' confidential and proprietary technology and trade secret information when developing the TTK." FAC ¶ 60. The Movants contend that this cause of action must be dismissed "because StOps is required to specify the factual basis for its claims" and therefore "may not plead such allegations based on information and belief." Mot. at 6–7 (citing *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009); *Simonyan v. Ally Fin. Inc.*, No. CV 12–8495–JFW (FMOx), 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013); *Solis v. City of Fresno*, No. 1:11-CV-00053 AWI GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012); *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011)). Plaintiff counters that "[a]ny allegations made on information and belief is adequately supported by facts directly pleaded, including . . . the existence of the nondisclosure agreement, the use of StOps' confidential information by Joseph and Erokhin, StOps' lack of consent . . . , StOps' compliance with its obligations under the Non[ ]Disclosure agreement, etc." Opp'n at 11 (citing FAC). These allegations "provide more than a sufficient factual basis for the causes of action in the complaint." *Id.* at 12.

The Court agrees with the Movants that StOps has failed sufficiently to plead a cause of action for breach of the nondisclosure agreement. StOps has failed to specify what confidential information the Movants used in developing the TTK. It therefore appears from the face of the First Amended Complaint that StOps is alleging that the Movants used

the "valuable knowledge and insight into the features and components of the Cut Suit and how those components operate to simulate a traumatic injury or wound" in developing the TTK. *See* FAC ¶ 22. The problem here is that the nondisclosure agreement excludes from its definition of confidential information "information that is . . . publicly known at the time of disclosure or subsequently becomes publicly known through no fault of the Receiving Party." *See* FAC Ex. 10 & 11 ¶ 2. The Patents-in-Suit are dated September 23, 2014, *see* FAC Ex. 1; May 10, 2016, *see* FAC Ex. 2; and March 13, 2018. *See* FAC Ex. 3. Consequently, any information contained in the Patents-in-Suit is not confidential information for purposes of the nondisclosure agreement. "Because Plaintiff fails to allege that [the Movants] used any confidential information beyond what the . . . Patent[s-in-Suit] . . . disclosed to the public, its claim for breach of [the nondisclosure agreement] fails." *See Metricolor LLC v. L'Oreal S.A.*, No. CV 18-364-R, 2018 WL 5099496, at *5 (C.D. Cal. Aug. 15, 2018).

The Court therefore **GRANTS** the Movants' Motion as to StOps' second cause of action for breach of the nondisclosure agreement. Because StOps has not previously been granted leave to amend this cause of action and because StOps could conceivably allege that Defendants used confidential information as defined by the nondisclosure agreement in creating the TTK, the Court **GRANTS** StOps leave to amend.

### III. Violation of California Business and Professions Code § 17200

StOps claims that "Defendant[s'] unauthorized use and/or sale of a product that embodies the inventions claimed in the '403 Patent is unfair and offends public policy," FAC ¶ 68, and that Mses. "Joseph and Erokhin's unauthorized use of StOps' confidential and proprietary technology and trade secret information to make a product that embodies the inventions claimed in the '403 Patent or otherwise cause harm to StOps for their own benefit is unfair and offends public policy." *Id.* ¶ 69. The Movants contend that this claim must be dismissed because it is "founded on the same defective basis that fails to support the infringement [and breach of the nondisclosure agreement] claims." *See* Mot. at 6; *see also id.* at 7–8.

It is true that "[a] UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012). Here, the Court determined that StOps has failed to state a claim for breach of the nondisclosure agreement. Accordingly, the Court **GRANTS IN PART** the Movants' Motion and **DISMISSES** StOps' third cause of action for unfair competition in violation of the UCL to the extent that that cause of action is predicated on Mses. Joseph and Erokhin's alleged breach of the nondisclosure agreement. Because the Court granted StOps leave to amend its second cause of action, it also **GRANTS** StOps leave to amend its third cause of action. The Court also, however, concluded that StOps had stated a claim for patent infringement. The Court therefore **DENIES** the Movants' Motion as to StOps' third cause of action for unfair competition in violation of the UCL to the extent that that cause of action is predicated on Defendants' infringement of the Patents-in-Suit.[5]

## IV. Alter Ego Allegations

StOps alleges that, "[o]n information and belief, KBZ FX, Inc. was formed as a direct result of the threat of this litigation, and is merely the alter-ego of Defendants Erokhin and Joseph." FAC ¶ 8. The Movants seek dismissal of these allegations because they are not pled with particularity. *See* Mot. at 8. StOps counters that "[t]here is no specific cause of action alleging Alter Ego, nor is there a specific prayer for relief requesting a finding of Alter-Ego at this time." Opp'n at 12. Accordingly, "StOps . . . will seek to prove this fact through discovery and at trial." *Id.*

/ / /

---

[5] The Court notes that a UCL claim premised solely on infringement of a patent is generally preempted by the Patent Act. *See, e.g.*, *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *8 (C.D. Cal. May 8, 2015) ("[T]he alleged unfair conduct is simply Defendants' unauthorized manufacture, distribution, or sale of goods that infringe on Plaintiff's patent. This theory of wrongful conduct is not 'qualitatively different' than a claim for patent infringement based on that conduct; therefore, the unfair competition claims premised on this theory are preempted by the Patent Act."). Because Movants did not request dismissal of StOps' third cause of action on this ground, the Court does not address the preemption issue here.

StOps is correct that the proper vehicle for the Movants' challenge is not a motion under Rule 12(b)(6); rather, the Movants' request is more properly construed as a motion to strike pursuant to Federal Rule of Civil Procedure 12(f). Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As indicated in the Court's prior Order, *see* ECF No. 15 at 7, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). "Rather, a plaintiff must allege specifically both the elements of alter ego liability, as well as facts supporting each." *Id.* These elements are: "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545–46 (9th Cir. 1985). In analyzing the doctrine, courts consider factors such as:

> commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.

*Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538–39 (2000) (internal quotation marks omitted).

As before, the Court concludes that StOps' alter-ego allegations are conclusory and therefore are insufficient to plead alter ego liability. Because "the allegations in paragraph[ 8] cannot establish alter ego liability and therefore have no bearing on any issue involved in this litigation[,] . . . [t]he Court **GRANTS** [the Movants'] motion" and **STRIKES** the alter-ego allegations in paragraph 8 of the First Amended Complaint. *See Lovesy v. Armed Forces Ben. Ass'n*, No. C 07-2745 SBA, 2008 WL 696991, at *5 (N.D. Cal. Mar. 13, 2008) (citing Fed. R. Civ. P. 12(f); *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)) (emphasis added).

///

# CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Movants' Motion to Dismiss. Specifically, the Court **DISMISSES WITHOUT PREJUDICE** StOps' second cause of action for breach of the nondisclosure agreement and third cause of action for unfair competition in violation of California Business and Professions Code section 17200 to the extent it is predicated on Ms. Joseph's breach of the nondisclosure agreement. The Court also **STRIKES** StOps' alter-ego allegations from paragraph 8 of the First Amended Complaint. The Movants' Motion is otherwise **DENIED**. StOps **MAY FILE** a second amended complaint on or before twenty-one (21) days of the electronic docketing of this Order. *Should StOps choose not to file an amended complaint, this case will proceed on the remaining allegations.*

Because StOps has not filed any document with the Court indicating that it has served Defendants Kasey Erokhin or KBZ FX, StOps **SHALL FILE** proof of service against Ms. Erokhin and KBZ FX on or before twenty-one (21) days of the electronic docketing of this Order. *Failure to do so may result in dismissal without prejudice of StOps' causes of action against Ms. Erokhin and KBZ FX pursuant to Federal Rule of Civil Procedure 4(m).*

**IT IS SO ORDERED.**

Dated: May 7, 2019

Hon. Janis L. Sammartino
United States District Judge